JOHN RANDOLPH'S CASE.

Suffolk.   November 23, 1923.— January 3, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act*, Double compensation, Serious and wilful misconduct of employer; Procedure: appeal, evidence, whether board member prejudiced.

At the trial of a claim by an employee for double compensation due to serious and wilful misconduct by his employer resulting in his injury, there was evidence tending to show that the employee, who was employed on a carding machine, complained to his foreman that the machine was not working properly; that the foreman examined the machine and told the employee to pull out waste which was between the gear and the aprons and to stick

his finger in for that purpose; that, upon the employee asking, " Do you want me to get my finger caught? " the foreman replied, "You will not get your fingers caught;" that the employee then said, "You are the boss, I suppose I am to obey orders," to which the foreman replied that if he did not want to work "there were a lot more who did want to work;" that the employee then proceeded as directed and was injured. The evidence tended to show that the method which the employee was directed to adopt was obviously dangerous. *Held*, that

(1) A finding was warranted that one acting as superintendent for the employer ordered the employee to do an act, which the superintendent knew might result in serious injury, with an intention that the order should be carried out;

(2) Awarding of double compensation was proper upon such a finding.
At the hearing of the case above described, it was improper to admit evidence of experts that the cleaning of the machinery in motion was dangerous, such subject not being a proper one for expert testimony; but the substantial rights of the parties in the circumstances were not affected injuriously by the admission of such testimony, it appearing from the record that the single member of the board who heard the evidence did not place reliance upon such testimony and that his findings were based solely upon the testimony of the employee.
A single member of the Industrial Accident Board is not disqualified from sitting on the board reviewing a case heard by him as a single member merely by the fact that at the hearing before him as a single member he suggested that the employee consult a lawyer and gave him several names of lawyers, among them the name of a lawyer whom the employee finally had consulted and who subsequently continued in the prosecution of the case.

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board affirming and adopting findings and rulings by a single member of the board and awarding double compensation for total incapacity and double compensation for specific injury to the claimant's right hand received while he was in the employ of New England Woolen Company.

In the Superior Court, the case was heard by *McLaughlin*, J. Material evidence and findings by the single member of the Industrial Accident Board as shown in the record before the trial judge are described in the opinion. By order of the judge, a decree was entered in accordance with the decision of the Industrial Accident Board. The insurer appealed.

*E. I. Taylor*, for the insurer.

*E. Field*, (*L. Brown* with him,) for the employee.

CARROLL, J.   At the first hearing before a member of the Industrial Accident Board it was found that the employee's right hand was permanently injured and incapable of use. He was awarded specific compensation for this injury. At a second hearing it was found that the acting superintendent of the employer " intentionally ordered the employee, Randolph, to clean the gears of the carding machine while it was in motion, with the knowledge that it was likely to result in serious injury and that his intentional doing of the act which required the employee under implied threat of dismissal to clean this machine was done in the light of the knowledge that was brought home to him by the employee that such an act would result in serious injury to said employee."   Double compensation was awarded Randolph at this hearing.   These findings were adopted by the Industrial Accident Board and a decree was entered in the Superior Court awarding double compensation, from which decree the insurer appealed.

If an employee is injured by reason of the serious and wilful misconduct of an insured employer, or of any person regularly entrusted with and exercising the power of superintendence, " the amounts of compensation hereinafter provided shall be doubled."   G. L. c. 152, § 28.   Serious and wilful misconduct differs in kind from negligence or gross negligence.   It is an intentional wrong, and is criminal or *quasi* criminal.   See *Cotter, petitioner*, 237 Mass. 68.   " Serious and wilful misconduct is much more than mere negligence, or even than gross or culpable negligence.   It involves conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."   *Burns's Case*, 218 Mass. 8, 10.

There was evidence that the carding machine on which Randolph was employed was in operation and not working properly.   He complained to the foreman and the latter came to the machine, examined it and " looked down between the gear and the aprons and told the employee to pull the waste out."   The employee asked the foreman

what he would do it with, and the foreman told him to
" stick his finger in it." On the employee asking, " Do you
want me to get my finger caught?" the foreman replied,
" You will not get your fingers caught." The employee
then said, " You are the boss. I suppose I am to obey
orders," to which the foreman replied, " If he did not want
to work, there were a lot more who did want to work." The
employee then proceeded to take the waste out of the moving
machine. He put his fingers in and the gear caught his
sleeve and drew in his arm, where it was held until the power
was thrown off. The employee further testified that his
hand was caught between the ring doffer and yarn, on the
finisher, which contained a lot "of little pins on it;" that
the " clearance " in which he was told to clean the waste
was about the size of " a calling card between the two
rollers."

On this evidence we cannot say that the finding for the
employee was wholly unwarranted. The foreman must be
held to have known the danger of removing the waste from
the gears of the carding machine while in motion. He
knew, or ought to have known, that if the employee put his
fingers between the moving gears, they were almost certain
to be caught. With this knowledge, and against the pro-
test of the employee, the foreman assured the employee,
in effect, that there was no danger, that he would not get
his fingers caught, and when the employee said, " I suppose
I am to obey orders," he was told that there were others
who were willing to do the work. It could have been found
that the foreman intended that his order should be obeyed;
that he gave the order to Randolph with knowledge of the
consequences, and with the expectation that it would be
executed. The board member saw and heard the witnesses.
In the opinion of the majority of the court, it was not un-
warranted for the member to find on this evidence, that the
misconduct of the foreman was serious, in view of the grave
and dangerous injury which was likely to result from it, and
was wilful, because with knowledge of the danger and the
probable consequences, the order was given, with the inten-
tion that it should be carried out. See *Burns's Case*, 218

Mass. 8. *Romana* v. *Boston Elevated Railway*, 218 Mass. 76, 82, 83. *Beckles's Case*, 230 Mass. 272. *E. Clemens Horst Co.* v. *Industrial Accident Commission*, 16 A. L. R. 611.

At the second hearing evidence of experts was admitted, against the exception of the insurer, that the cleaning of machinery in motion was dangerous. This evidence was clearly inadmissible. The danger could be understood by persons of common intelligence without the aid of experts. *Gleason* v. *Smith*, 172 Mass. 50. Questions of evidence at the hearing before the board member will be considered on appeal; and following the practice in equity, the decree will not be reversed for error in this respect, unless the substantial rights of the parties are affected. *Pigeon's Case*, 216 Mass. 51, 54, 55. The substantial rights of the parties were not affected by the admission of this expert testimony. It is matter of common knowledge that the work of cleaning machinery or removing waste from it while in motion is dangerous. As we construe the report of the single member, reliance was not placed on this expert testimony, but was based on the testimony of the employee alone. The expert testimony was not taken into account. We therefore think that the insurer was not prejudiced thereby.

At the second hearing the employee was asked if the member who sat at the first hearing suggested to him that he (the employee) consult a lawyer, and gave him the name of Mr. Field. The employee answered " 'No, he suggested several names.' Q. 'Mr. Field's among them?' A. 'Yes.'" He further answered that he was not told by the member, " to go to Mr. Field." The member before whom the hearing was held sat as a member of the board of review. The insurer contends that, because of this conversation with the employee, it was impossible for the member to sit as an impartial judge of the law and facts, and objected before the full board to the member acting in the case. The Industrial Accident Board is an administrative board. As was said in *Devine's Case*, 236 Mass. 588, 594, " The committee on arbitration and the Industrial Accident Board are purely administrative tribunals created solely to ad-

minister the workmen's compensation act in aid to the courts." See *Fountaine's Case,* 246 Mass. 513. The evidence concerning the conduct of the single member did not disqualify him from sitting on the board in review. His suggestion to the employee that he consult a lawyer was not sufficient to show that the member was prejudiced or unfair, or would fail to decide the case on the evidence in an impartial manner.

*Decree affirmed.*