María C. Ruiz de Torres, etc., Appellant, *v.* Industrial Commission of Puerto Rico, Respondent; and The Manager of the State Insurance Fund, Insurer of Plata Sugar Company, Employer.

No. 237. Argued March 16, 1942.—Decided April 10, 1942.

Mr. Justice Todd, Jr., delivered the opinion of the court.
Antonio Torres Jiménez, overseer of the Plata Sugar Co.,

died on October 14, 1937, according to a certificate of Dr. Néstor Cardona, from "septicemia, pyemia, erysipelas, empyemia on the left side, jaundice, hemoglobinuria." His widow María C. Ruiz de Torres, alleging that the erysipelas from which her husband suffered had been caused by an industrial accident that he had when his right ear was cut by a cane leaf while he was making an inspection tour on horseback, on the 7th of the same month, of one of the plantations, submitted a claim for compensation to the Manager of the State Insurance Fund. Said claim was denied by the manager on the ground that "from the investigation made in the case, it appears that prior to the time of the alleged accident Torres was already showing all the symptoms of the disease which caused his death."

After the case had been appealed to the Industrial Commission and the proper hearing held at which the parties introduced their evidence, the commission affirmed the ruling of the manager, and rendered a lengthy and elaborate decision covering twenty-five pages in which it carefully analyzed the testimony of all the witnesses, especially that of Doctors M. Rodríguez Cancio, Antonio Muñiz, Néstor de Cardona, Pedro A. Perea and Ramón Piñeiro Fernández.

After setting forth said analysis, the Industrial Commission in its decision said:

"The Industrial Commission thinks that, according to the evidence submitted to it, the workman Antonio Torres Jiménez was suffering from an infection in his right ear since October 4, that is, three days before the alleged accident occurred, if at all, and that the death of the workman was not due to the latter but to the infection from which he had been suffering."

The petitioner, María C. Ruiz de Torres, has applied for a review of the decision of the Industrial Commission and we issued the writ, as it appeared that the errors attributed to said commission principally referred to its weighing of the expert testimony when deciding the appeal, which is the

only case in which this court may consider the evidence introduced, in accordance with §11 of Act No. 45 of April 18, 1935 (Laws of 1935, p. 250), as the same was amended by Act No. 121 of May 2, 1940 (Laws of 1940, p. 730).

Before going into a consideration of the errors assigned by the petitioner it would seem advisable to quote somewhat extensively from the grounds which the respondent set forth in its decision and lead it to the conclusion that the workman in this case had been suffering from the disease that caused his death for several days prior to the occurrance of the alleged accident. It said:

"What are the questions at issue which we must decide in this case? They are: first, whether or not an industrial accident occurred; second, assuming that such accident actually occurred, whether the same had a causal relation with respect to the death of the workman.

"It is alleged by the petitioner that while the deceased workman was making an inspection tour of the Méndez Plantation (*Colonia*) of the Plata Sugar Co. on October 7, 1937, accompanied by Messrs. Salvador Quiñones and Humberto Olivencia, he suffered a slight cut on his right ear caused by a cane leaf, at about ten o'clock in the morning, and that one and a half hours afterward, or at 11:30 a. m. the same day, Antonio Torres Jiménez was already very ill with the ear swollen and in a feverish condition which made it necessary for his wife, petitioner herein, to go from the Plata Ward (*Barrio*) to the town of San Sebastián in order to call on Dr. Muñiz and get a prescription from him. But it may be asked: was the workman Antonio Torres Jiménez suffering from any infection in his right ear prior to October 7, 1937? Let us see what Dr. Muñiz testified when examined under oath by Mr. Jenaro Cortés Hernández, Investigator of the State Fund, insurer's Exhibit 3, p. 21. It will be well to state that the report of this investigation was introduced in evidence by the Manager of the State Insurance Fund and admitted without any objection on the part of the counsel representing the petitioner. Dr. Muñiz was asked whether when he went to call on the workman for the first time he asked the latter how long he had been suffering from the infection shown by his right ear, to which the witness replied that he had indeed asked such question and was told that on Tuesday evening the workman had gone to

bed feeling sick; that on Wednesday he had not gotten up from bed and the ear was already swollen. Also Dr. Cardona testified that during a medical consultation the wife of the workman had admitted that the patient had been ill since October 4. Steno-graphic record, p. 21, and insurer's Exhibit 3, p. 27. Regarding this particular, Dr. Perea testified that when he went up to the patient's room he saw him and examined him, and that on first im-pression it seemed to him that the case was very serious and that he suggested to the patient that in order to be able to determine exactly the nature of his ailment he must explain how the accident occurred; and that Antonio Torres Jiménez then stated that on·October 4, according to the notes written down by the witness on the notebook, he, the workman, felt some pain in his ear, an itching, and that he had scratched his ear, and that on the 6th he had felt very ill and had sent for Dr. Muñiz; that he continued to be ill and then on the 9th he was removed to Dr. Cardona's Clinic. Stenographic record p. 108. All of the physicians who testified at the public hearing, both for the insurer and for the petitioner, agreed that the incubation period for erysipelas fluctuates between three and seven days. Dr. Muñiz himself, upon being questioned by the commission whether in his opinion the symptoms presented by the workman at 11:30 on the morning of October 7, when it is alleged that he was injured, could be the result of the small scratch which it was claimed the workman had suffered one and a half hours previously, answered that he did not think that the incubation period for that disease (meaning erysipelas) could be so short. That being so, and the incubation period for erysipelas being from three to seven days, how is it possible that on the day following the alleged accident, at 9:30 in the morning, Dr. Muñiz could observe a fully developed case of erysipelas? It should be noted that said physician stated that when he examined the ear he found, according to the description set forth by him on p. 63 of the stenographic record, that there was a red area with a raised and irregular border showing a well defined demar-cation line between the diseased tissue and the normal tissue, that is, the disease already in the full period of invasion. In our judg-ment, the most logical conclusion, supported by the evidence, is that the disease began to manifest itself on October 4.''

 In the first assignment of error, it is claimed that the Industrial Commission failed to decide definitely whether or not an industrial accident had actually occurred in this case. This is true, but since the commission held that the

death of the workman was not due to the alleged accident, if any, the assignment is without merit. Such a finding would have served no practical purpose if, as was decided by the respondent, the sole cause of the death of the workman existed independently from and prior to the accident. In connection with this first assignment we can dispose of the third, wherein the petitioner maintains that even though it were assumed that the injury suffered by the workman in his right ear was not the direct cause of his death, it so affected his physical condition that it caused his death.

At first view, the petitioner would seem to be right except for the fact that she is raising this question for the first time before this Supreme Court. Neither before the Manager of the Fund nor before the Industrial Commission did she set up this theory, nor did she attempt to establish the same. None of the medical experts—five of them testified before the respondent—were asked a single question as to whether the slight cut received by the workman on his ear on October 7 could have aggravated in any way the disease from which he was already suffering according to them. All of the physicians agreed that the incubation period for the erysipelas must have started at least three days previously, that is, on October 4. The contention of the petitioner from the beginning of her claim has been that the accident, that is, the cut on the ear caused by the cane leaf, produced as a direct result erysipelas and the other complications which caused the death of the workman.

■ The general rule in this kind of case is that the burden is on claimant to prove that the accident was the proximate cause of the death, especially where it is shown that the workman was suffering from a disability, disease, or weakness prior to the accident. 71 C. J. 1069. See also the case of *In re Madden,* 111 N. E. 379; *Herlihy's Case,* 166 N. E. 556; and *Gee's Case,* 186 N. E. 83.

■ The petitioner, when testifying before the commissioner, at all times denied that her husband had been suf-

fering from any disease prior to October 7, when, an hour and a half after having cut his ear, he went to bed in a feverish condition. How can it be now maintained, as petitioner claims, that the respondent erred in not holding that the wound had aggravated the disease whose existence was denied by the petitioner herself. The third assignment must be dismissed.

■ By the second assignment the petitioner urges that: "...contrary to the rules and principles applicable to the weighing of evidence, the Hon. Industrial Commission made an erroneous finding which is not supported either conclusively or preponderantly by the testimony of experts or of *any other kind introduced* at the hearing,..."

As to the testimony other than that of an expert nature, we are not authorized by law to consider the same, since this is exclusively the function of the Industrial Commission (§11, Act No. 45 of 1935, *supra; Amenguar* v. *Industrial Commission,* 49 P.R.R. 10), it being only in cases where it is alleged that no evidence was introduced on which the commission might base a decision that this court can review the same on that ground. *Cardona* v. *Industrial Commission,* 56 P.R.R. 813.

■ Now, in this assignment, as well as in the fourth and fifth, the petitioner attacks (1) the weighing of the expert testimony and (2) the admission of a part of the testimony of Doctors Cardona, Piñeiro, and Perea as being heresay evidence.

We have carefully read the lengthy transcript of the evidence, and we are of the opinion that the Industrial Commission did not err in holding that the expert testimony showed that the incubation period for erysipelas is from three to seven days, since it was so asserted by all the physicians, and that at the most, the minimum period would be two days, as stated by Dr. Perea; and that it having been proved that the workman had exhibited all the symptoms and characteristics of said disease less than twenty-four hours

after having received the cut on his ear, such injury could not be the cause of said disease. Nor did the commission err in admitting or giving credit to the testimony of Doctors Cardona and Perea to the effect that the petitioner, as well as her husband, had informed them that the latter had been ill since October 4, that is, three days before the alleged accident occurred. Such testimony involved admissions made by the petitioner as well as by the workman immediately after the happening of the alleged accident and during his brief illness, and they formed part of the transaction in question, *res gestae,* and consequently, were admissible to contradict the subsequent testimony of the petitioner to the effect that her husband was taken ill on October 7. The facts of this case distinguish it perfectly from that of *Tomás* v. *Industrial Commission,* decided by this court on February 4, 1942 (59 P.R.R. 852), in which it was held that the statement attributed to the workman as made before the accident occurred, was hearsay evidence and inadmissible. ■ Moreover, conceding that said testimony constituted heresay evidence, it appears from the record that counsel for the petitioner made an objection to its admission before the *Industrial Commission,* and hence application would lie of the rule cited by this court in the case of *Fajardo et al.* v. *Tió,* 17 P.R.R. 730, that ''hearsay testimony has probatory force in cases where no exception has been taken to the admission thereof, or has the veracity of the witnesses been questioned, or when such testimony is not essentially incredible or improbable.'' To the same effect, see the monograph published in 104 A.L.R. 1130.

The last error assigned is of a general character and makes reference to the conflict in the evidence and to the claim that the preponderance of the same favored the theory of the petitioner in her claim. What has already been said suffices to conclude that, in so far as that assignment concerns the expert testimony, the same lacks merit.

230

The petition must be denied and the decision appealed from affirmed.

Mr. Justice Travieso did not participate herein.