GREGORY B. KHACHADOORIAN'S CASE.

Suffolk. October 8, 1952. — January 6, 1953.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Procedure: argument before Industrial Accident Board, requests for rulings; ·Incapacity. *Error*, Whether error harmful. *Statute*, Retroactive statute.

A refusal by a single member of the Industrial Accident Board hearing a workmen's compensation case to permit the insurer's counsel to argue the case on the evidence introduced did not prejudice the insurer where it was afforded an opportunity for such argument before the reviewing board. [626–627]

In view of extensive findings of fact made by the Industrial Accident Board in a workmen's compensation case, it was not required to deal with a request by the insurer for a ruling to the effect that the employee could not be found to be totally and permanently disabled. [628]

A refusal by the Industrial Accident Board in a workmen's compensation case to deal with a request by the insurer for a ruling that there was "no presumption of" a certain fact on which the employee's claim was founded did not harm the insurer where it appeared from the record that the board correctly dealt with the case on the basis that there was no such presumption and that such fact must be proved by the employee in the normal manner. [628, 629]

The elimination of the presumption of permanent and total disability from G. L. (Ter. Ed.) c. 152, § 34A, in the revision of that section by St. 1945, c. 717, was a procedural change only, and the revised statute governed the determination of a claim for compensation for such disability heard after the revision although the claim arose out of an injury occurring prior to the revision. [629]

Facts found in a workmen's compensation case respecting an employee who at the age of fourteen had suffered the loss of vision in both eyes through an injury while at work and who thereafter had received instruction at schools for the blind and attended high school, was a student at a college of business administration at the time of the hearing of the case, and had not been gainfully employed at any time since his accident justified a conclusion that he was totally and permanently disabled within G. L. (Ter. Ed.) c. 152, § 34A, as amended. [629-631]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Swift*, J.

*David H. Fulton*, (*Robert Fulton* with him,) for the insurer.

*S. Jason Ginsburg*, (*William E. Ginsburg* with him,) for the claimant.

SPALDING, J. On August 22, 1942, the employee received an injury which rendered him industrially blind, for which in prior proceedings the insurer was ordered to pay compensation. That order has been complied with and is not before us. The present controversy arises out of a claim for total and permanent disability compensation. G. L. (Ter. Ed.) c. 152, § 34A, as appearing in St. 1945, c. 717, as amended. The single member decided in favor of the employee, and his decision was affirmed by the reviewing board, one member dissenting. From a decree of the Superior Court ordering payments in accordance with the board's decision, the insurer appealed.

1. After the evidence was in at the hearing before the single member, counsel for the insurer requested an opportunity to argue the case on the evidence but the request was denied, subject to his exception. The exception was pressed before the reviewing board without success. There was no error. General Laws (Ter. Ed.) c. 152, § 5, provides

in part: "The department may make rules consistent with this chapter for carrying out its provisions. Process and procedure shall be as simple and summary as reasonably may be." It appears that the department's Rule IV-7, entitled "Proceedings at hearings before single member," provides: "The hearing member, at his discretion, may permit an argument on the facts following a hearing." In substance the insurer argues that without an opportunity to argue its case before the single member it did not have its day in court. We are not called upon to determine the validity of the rule just quoted, for we are convinced that the insurer was not prejudiced by the ruling of the single member. The insurer concedes that it was afforded an opportunity to argue its case before the reviewing board. If, as we do not decide, there was any infirmity in the proceedings before the single member by reason of his ruling, it was cured. "The findings, rulings and decision of the reviewing board entirely superseded the action taken by the single member, which thereafter became of no importance." *Di Clavio's Case*, 293 Mass. 259, 261. *McLean's Case*, 323 Mass. 35, 37. We are therefore not confronted with the question whether the provisions in the act for a hearing (§§ 7, 10) would be satisfied where a party was compelled to submit his case without argument both before the single member and the reviewing board. That would be a very different question. See *Londoner* v. *Denver*, 210 U. S. 373, 386; *Morgan* v. *United States*, 298 U. S. 468, 479–481; *Shields* v. *Utah Idaho Central Railroad*, 305 U. S. 177, 182; *Harrison* v. *Commissioner of Internal Revenue*, 107 Fed. (2d) 341, 342 (C. C. A. 6); *L. B. Wilson, Inc.* v. *Federal Communications Commission*, 170 Fed. (2d) 793, 805 (C. A. D. of C.); *Colonial Trust Co.* v. *Austin*, 133 Conn. 696, 699; *Handlon* v. *Belleville*, 4 N. J. 99, 105; *Wisconsin Telephone Co.* v. *Public Service Commission*, 232 Wis. 274, 294–296. As these decisions hold — and rightly — a judicial or quasi judicial hearing involves more than an opportunity to present evidence; there must also be an opportunity for argument.

2. Before the reviewing board the insurer presented the following requests for rulings.[1] "1. In this hearing there is no presumption of total disability, upon the evidence presented. 2. The employee having voluntarily removed himself from the labor market and having made no attempt to earn wages cannot be heard to say that he is totally and permanently disabled from earning wages." The board ruled that the "requests have been amply disposed of by the findings and rulings herein made and . . . [we] decline to pass specifically upon them. *Belezarian's Case*, 307 Mass. 557." In view of the fact that the board made extensive findings of fact we are of opinion that the second request falls within the rule of *Belezarian's Case* and that the board did not have to deal with it. The rule in *Belezarian's Case* is that the board may make rulings of law material to its decision but cannot be required to do so for the reason that the purpose of such rulings in most instances is served by the subsidiary findings that the board is required to make. After stating this rule the court went on to say, "What has just been said may not apply to requests for rulings that deal with the technic of finding the facts, such as the burden of proof. As in the case of masters in equity, it is not easy to see how a party could make sure of the correct application of the law governing the burden of proof except by requests for rulings" (page 561). See *McLean's Case*, 323 Mass. 35, 40–41.

The first request, we think, falls within this exception. Whether the board in deciding the case could make use of a presumption obviously was a matter involving "the technic of finding the facts." Thus it was required either to deal with this request or to make clear in its decision that it was applying the correct principle of law. Inasmuch as the board did not do the former the question narrows down to whether it did the latter.

The plaintiff's claim for compensation is based on § 34A. This section was inserted by St. 1935, c. 364, the pertinent

---

[1] Similar requests had been presented to the single member.

portions of which in 1942 when the accident occurred were: "In any hearing or investigation under this chapter, loss of . . . both eyes . . . shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts, and proof thereof shall be by weight of the evidence." In substance this created a presumption of permanent and total disability where the loss of both eyes was shown, which could be overcome only by "conclusive proof to the contrary." A new § 34A was substituted by St. 1945, c. 717, in which the quoted language was omitted, and, with an exception not material here, the section stood in this form at the time of the hearing before the board.

The effect of the 1945 statute was to eliminate the presumption and restore the normal requirements of proof (see *Ginley's Case*, 244 Mass. 346, 347) for all cases under § 34A. It is clear that this change was procedural only, and that the case had to be decided under the later statute without the aid of the presumption. G. L. (Ter. Ed.) c. 152, § 2A, inserted by St. 1946, c. 386, § 3. *Goddu's Case*, 323 Mass. 397. *Lapinsky's Case*, 325 Mass. 13, 15. We are satisfied that the board dealt with the case on that basis. It is apparent from its decision that it considered the 1945 statute as applicable, that the presumption was no longer in effect, and that the question whether the employee was permanently and totally incapacitated was "a matter of fact to be . . . proven if contested." The insurer was not harmed, therefore, by the board's refusal to deal with its request. See *McLean's Case*, 323 Mass. 35, 40.

3. The final contention of the insurer in substance is that, having removed himself from the labor market and having made no attempt to earn wages, the employee cannot be heard to say that he is totally and permanently disabled from earning wages. We are of opinion that this contention cannot be sustained, and that the finding of total and permanent incapacity made by the board must stand. The facts pertinent to this aspect of the case are these. The

employee sustained an injury in August, 1942, which re-
sulted in the loss of sight in both eyes. He was at that time
fourteen years old and had been attending the public schools
in Arlington, and expected to go on to high school in Septem-
ber. When injured he was employed as a helper in his
uncle's garage. After the accident the employee received
instruction at the Perkins Institute for the Blind and the
Massachusetts School of the Blind. The courses he studied
at these schools were generally of a college preparatory
nature. He also studied Braille and typing and took re-
quired courses in weaving and shop work. After attending
Arlington High School for the last year of his secondary
education, he enrolled in the College of Business Adminis-
tration of Boston University. At the time of the hearing
before the board he was in his junior year there. He has not
been gainfully employed at any time since the accident.

The insurer argues that the employee's present incapacity
for work is due *not* to his blindness, which is undisputed, but
rather to his deliberate choice to pursue a "classical" edu-
cation in preference to the training in industrial skills which
was available to him at the schools for the blind which he
attended. Thus, it is said, his incapacity is due to a cause
for which the insurer would not be liable. See *Earry's Case*,
235 Mass. 408; *Strycharz's Case*, 291 Mass. 212. The board
could have found otherwise. "Complete physical or mental
incapacity of the employee is not essential to proof of total
and permanent disability within the meaning of the statute.
It is sufficient if the evidence shows that the employee's dis-
ability is such that it prevents him from performing remuner-
ative work of a substantial and not merely trifling character,
and regard must be had to the age, experience, training and
capabilities of the employee." *Frennier's Case*, 318 Mass.
635, 639. Considering these things, it becomes apparent
that the employee, by attending school and attempting to
fit himself for some gainful occupation, did not thereby
render himself ineligible for permanent and total disability
compensation. What was said recently in *Paltsios's Case*,
*ante*, 526, 528, in discussing a similar situation is per-

tinent here: "The employee doubtless has sustained a permanent injury which will certainly interfere with the performance of the daily functions of life, depending to a considerable degree upon the nature of the occupation in which he is engaged or the profession which he has adopted as the means of a livelihood. No one at this point can predict with any degree of certainty what his life work will be. . . . It is true that he has not performed any work since the injury, but that might well be ascribed to the fact that he was attending school. Of course, the insurer cannot complain of reasonable efforts made in good faith by the employee to better his future position in life." The employee in the present case was injured at a time when he had not yet acquired any skills which he could employ to support himself. It is obvious that even had there been no accident and no loss of vision the employee would have had to pursue some course of training in future years, and that the effect of the loss of vision was to limit greatly his freedom of choice in that respect. The findings of the board were warranted by the evidence and they are sufficient to sustain its conclusion, namely, that the employee's attendance at school in the circumstances did not relieve the insurer of liability.

In minor respects relating to form the decree must be modified, as set forth in the rescript, and as so modified, is affirmed. Costs under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, as amended, shall be allowed by the single justice.

*So ordered.*